IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 6, 2004 Session

# TENNESSEE ENVIRONMENTAL COUNCIL, INC., ET AL. v. BRIGHT PAR 3 ASSOCIATES, L.P., ET AL.

Appeal from the Chancery Court for Hamilton County
No. 03-0775 (Part II)    Howell Peoples, Chancellor

FILED MARCH 8, 2004

No. E2003-01982-COA-R3-CV

A conservation easement affecting property adjoining South Chickamauga Creek in Chattanooga was created in 1996. Property zoned for business and owned and developed by some of the Defendants is adjacent to the easement. The Plaintiffs allege that the development and construction activities of the Defendants adversely and unlawfully affect the easement. The complaint was dismissed upon a ruling that the Plaintiffs had no standing to enforce the easement, notwithstanding the language of the Conservation Easement Act, Tennessee Code Annotated § 66-9-301, et. seq., that it may be enforced by the "holder and/or beneficiaries" of the easement. The controversy centers on the meaning of the word "beneficiaries." We hold that any resident of Tennessee is a beneficiary of the easement, and thus has standing to enforce it.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

John P. Konvalinka, Charles G. Fisher and Jim K. Petty, Chattanooga, Tennessee, Attorneys for Appellants, Tennessee Environmental Council, Inc., Coalition for Responsible Progress and Sandy Kurtz.

Roger W. Dickson, W. Scott Parrish, Philip A. Langford and Alison Bales Martin, Chattanooga, Tennessee, Attorneys for Appellees, Bright Par 3 Associates, L.P.; Corker Group, Inc; Osborne Building Corporation and DBS Corporation.

Russell W. Gray and Robert M. Steele, Chattanooga, Tennessee, Attorneys for Appellee, Wal-Mart Real Estate Business Trust.

**OPINION**

**I.**

On May 1, 1996, the East Ridge Development Co., conveyed to the City of Chattanooga a conservation easement affecting 40 acres of land adjacent to Chickamauga Creek.[1]

A conservation easement is a negotiated agreement between a landowner and certain nonprofit or governmental entities that are qualified to monitor and enforce the land use restrictions of the easement, all pursuant to certain federal and state regulations. There are several qualified organizations in Tennessee, most notably The Land Trust for Tennessee. The types and severity of the restrictions in conservation easements vary from agreement to agreement. If negotiations and research are carefully conducted, the restrictions should be tailored to fit both the long-term use plans of the landowner and the resource preservation goals of the qualified grantee.

The restrictions in a conservation easement generally prohibit use of the land that may adversely affect those resources that the easement intends to protect. For example, subdivision, development, significant commercial use (other than agriculture), clear-cutting of timber, strip mining, and billboard advertisements are commonly prohibited. Landowners are routinely able, however, to negotiate terms that will allow them to own, occupy, and perform a variety of activities on the property. These permitted activities may include, without limitation, residential occupancy, construction of new residential structures, construction of new agricultural structures, farming, hunting, camping, private airstrips, and equestrian activities.

Conservation easements are recorded in the public land records so as to be binding upon the then-current landowner and its successors in interest to the subject real property. That is, once a landowner has placed a conservation easement on its property, anyone purchasing or inheriting the land from that landowner will also be bound by the restrictions contained in the easement. The term of the easement is typically perpetual in nature, and the qualified grantee has no obligation to amend the restrictions should a landowner's desired use of the property be prohibited by the restrictions.[2]

The creation of a conservation easement is authorized by Tennessee Code Annotated § 66-9-307 which provides, inter alia, and as pertinent here, that

---

[1] The "Grant Deed of Conservation Easement" is unclear in various instances, one of which is the quantum of land to which the easement attaches. The body of the deed recites that "Grantor intends . . . to convey to Grantee the right to preserve the Conservation Values [of 40 acres lying along South Chickamauga Creek] in perpetuity." An Exhibit to the deed describes the conservation easement as consisting of 7.79 acres. Presumably, the 7.79 acres are a portion of the 40 acres. We do not know. The point, however, is not crucial to a resolution of this case. Another instance is the predicate for this action, although statutory language is utilized.

[2] Tennessee Real Estate Law Letter, Vol. 21, No. 5, February 2004, the Prefatory Note of the Commissioners on Uniform State Laws.

(c)onservation easements may be enforced by injunction or proceedings in equity by the holders and/or beneficiaries of the easement, or their bona fide representatives, heirs, or assigns.

## II.

The complaint, as amended, alleges that the "Property"[3] is owned and is being developed by the Defendants. The "Property" is alleged to be commercially zoned, and that it contains or has adjoining it wetland and conservation easement areas, protected under state and federal law, which drain directly into South Chickamauga Creek, a waterway subject to contaminant and discharge limitations under state and federal law. Further allegations are that a Wal-Mart Supercenter and adjoining strip mall are being constructed on the "Property" which would result in an illegal discharge of pollutants into South Chickamauga Creek and/or illegal alteration of the protected areas, and that site preparation has already resulted in damage to the protected areas. Irreparable harm is forecast unless the Defendants are restrained from further construction.

A temporary restraining order was issued on July 7, 2003, in accordance with the demand for relief, and scheduled for hearing on July 15, 2003. The Defendants filed motions to dissolve the temporary restraining order, alleging that the Plaintiffs cannot succeed on the merits, that there is no imminent threat of irreparable injury to the Plaintiffs or to the protected areas, and that the proposed injunction is contrary to the public interest.

At the July 15, 2003 hearing, the sole issue for resolution was whether the individual plaintiff, Ms. Kurtz, had the requisite standing to maintain this action. The Chancellor stated ". . . we need to find out whether Ms. Kurtz has any injury separate and apart from that of the member of the public." Ms. Kurtz thereupon testified at length about her environmental concerns, her dedication and devotion to the preservation of the flora and fauna of the property described in the easement, that she was an independent, environment education consultant, that she serves on the Board of the Tennessee Environmental Council and related organizations. She conducts nature walks through the easement property, and generally enjoys its solace and solitude.

The Chancellor made a finding of fact that Ms. Kurtz suffered no injury "separate or different" from an injury that the public at large has sustained, and that under settled law in Tennessee she had no standing to file the action. The Chancellor further found that only the grantee, the City of Chattanooga, has standing to enforce the easement and accordingly dismissed the complaint.

The Plaintiffs appeal and present for review the issue of whether Ms. Kurtz or the organizational Plaintiffs have standing to enforce the conservation easement. We review the record

---

[3] Described only as "certain real property generally located southeast of the Brainerd Road intersection with South Chickamauga Creek in Chattanooga."

*de novo*.  Because the dispositive issue is one of law, there is no presumption of correctness.[4]  Our concern is focused on the dismissal of the complaint, which necessarily dissolved the temporary restraining order, in light of the language of the Conservation Easement Act, Tenn. Code Ann. § 66-9-307, that conservation easements may be enforced by the "holders and/or beneficiaries of the easement."

**III.**

The Chancellor held

> Paragraph 5 [of the easement] . . . . sets out the grantee's remedies. It says this easement may be enforced by its holder or beneficiary. Grantee may bring an action for any remedies provided by Tennessee law.  So the deed . . .that creates the easement says the grantee, the City of Chattanooga, is the one who has the right to pursue for a remedy provided by law.  The easement is created for the benefit of the citizens of Chattanooga, but they are not designated as beneficiaries.  They are not the grantee of the easement.  The City of Chattanooga is.

We stress the language of the Act which provides that the conservation easement may be enforced by injunction or proceedings in equity by the holder and/or beneficiaries of the easement. The City of Chattanooga is the grantee, and thus the holder of the easement and obviously entitled to enforce the easement.  Who are the beneficiaries?

We are bound to ascertain and give effect to the Legislative intent with no undue restriction or expansion of the statutory language.  ***Lavin v. Jordon***, 16 S.W.3d 362 (Tenn. 2000).  We think it evident that the phrase "by the holder and/or beneficiaries" means someone in addition to the grantee; otherwise, the words "and/or beneficiaries" would be utterly meaningless, and we are not at liberty to ignore this language.  The word "beneficiaries" has a commonly accepted dictionary meaning: "those who benefit from the act of another."  Who benefits from the act of the grantor in creating this easement?  A conservation easement is "held for the benefit of the people of Tennessee."  Tenn. Code Ann. § 66-9-303.  We hold that any resident of Tennessee has standing to enforce it.  This interpretation is consistent with the terms of the deed and the Act, both of which require a liberal construction of the word "beneficiaries."  Superimposed is that the Act is a remedial one, and must be liberally construed to further and give effect to its purpose.  *See,* ***Loftin v. Langsdon***, 813 S.W.2d 475 (Tenn. Ct. App. 1991).  Further superimposed is the fact that the Legislature chose not to adopt the verbiage of the Uniform Act which precludes the enforcement of

---

[4]  The Chancellor evaluated the testimony of Ms. Kurtz from recognized perspectives not within our prerogatives to review and therefore we cannot find that the evidence preponderates against his factual findings. Rule 13(d) Tenn. R. App. P.  *See,* ***Metro. Air Research Testing Auth. Inc. v. Metro Gov't.***, 842 S.W.2d 611 (Tenn. Ct. App. 1992) holding that a party must demonstrate that [she] has suffered an injury which is distinct and severable.  *See,* ***State v. Johnson***, 79 S.W.3d 522 (Tenn. 2002).

a conservation easement by any entity other than a governmental body, charitable corporation or association with the specific right granted in the document.[5]

As stated, we have focused on the legal issue of standing, and express no opinion and make no findings respecting the merits of the case. The judgment of dismissal is reversed and the case is remanded for further proceedings.

We take note of the brief filed by Wal-Mart Real Estate Business Trust requesting that we consider the issue of whether the dismissal of the complaint against it was proper even if the Plaintiffs had the requisite standing. We are unable to respond for two reasons: First, the Chancellor did not rule on the specific issue, and secondly, it would be meaningless dictum for us to do so.

Costs are assessed to the Appellees.

_____
WILLIAM H. INMAN, SENIOR JUDGE

---

[5] A number of states have enacted a form of the Uniform Conservation Easement Act. Research indicates that in each instance third parties cannot enforce the easement unless the right is expressly granted. Tennessee appears, thus far, to be the only state to grant enforcement power to "beneficiaries" of the easement. *See, e.g.,* Ala. Code § 35-18-1: Ky. Rev. Stat. 382.800; La. Rev. Stat. 9:1272; Miss. Code Ann. § 89-19-3; Va. Code Ann. § 10.1-1009.